Charles S. Barquist (CA State Bar No. 133785)
    cbarquist@mabr.com
Lee Cheng (CA State Bar No. 191380)
    lcheng@mabr.com
Jared J. Braithwaite (CA State Bar No. 288642)
    jbraithwaite@mabr.com
MASCHOFF BRENNAN
300 South Grand Avenue, Suite 1400
Los Angeles, California 90071
Telephone:   (949) 202-1900
Facsimile:    (949) 453-1104

Attorneys for Defendant VIZIO, Inc.

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

# SOUTHERN DIVISION

| | |
|---|---|
| **VDPP LLC**,<br><br>                    Plaintiff;<br><br>      v.<br><br>**VIZIO, Inc.**,<br><br>                    Defendant. | Case No. 8:20-cv-00030-JVS-KES<br><br>**VIZIO, Inc.'s Response to VDPP LLC's Opening Claim Construction Brief**<br><br>HON. JAMES V. SELNA<br>UNITED STATES DISTRICT JUDGE<br>SANTA ANA, COURTROOM 10C<br><br>Claim Construction Hearing:<br>April 5, 2021 at 3:00 p.m. |

i

**TABLE OF CONTENTS**

I.    INTRODUCTION ......................................................................................... 1

II.   RESPONSIVE ARGUMENT REGARDING DISPUTED CLAIM TERMS ...... 2

    A.    VDPP's Opening Brief reinforces the indefiniteness of the claimed "storage" and "processor" specifically "adapted to" perform the claimed functions because VDPP fails to identify any disclosure for storage or processors performing those functions. ................................................................ 2

        1.    VDPP does not show that the terms "storage" and "processor" as used in the claims recite sufficient structure for the claimed storage and processors specially adapted to particular storage and video frame manipulation functions. ..................................................... 3

        2.    The specification fails to describe structure to perform the claimed functions for the generic computer terms "storage" and "processor." ........ 6

    B.    VDPP offers no support or argument for an interpretation of "image frame" as anything less than a frame. ................................................................ 10

    C.    VDPP's proposed construction is to eliminate the "frame" aspect of "bridge frame," but VDPP failed to support or at the very least to argue for adoption of its construction in its opening brief. ......................................... 11

    D.    VDPP offers no support or argument for an interpretation of "is different from" to refer to separate frames with the same image content. ...................... 13

    E.    The parties do not dispute the construction of claim term no. 8, "generate a bridge frame/blended modified image frame/modified combined image frame." ........................................................................................................ 15

    F.    VDPP offers no support or argument for an interpretation of "display" to include the absence of displaying image frames or bridge frames. .................. 15

    G.    VDPP offers no support or argument for an interpretation of "video stream" as anything other than the specific definition given in the Asserted Patents. ...................................................................................................... 17

    H.    VDPP offers no support or even argument for an interpretation of "blending" as anything other than the Asserted Patents' express definition for the term as "superimposing." ...................................................................... 18

III.  CONCLUSION ........................................................................................... 19

# TABLE OF AUTHORITIES

## CASES

*3M Innovative Properties Co. v. Avery Dennison Corp.*,
    350 F.3d 1365 (Fed. Cir. 2003)..................................................................18

*Aristocrat Techs. Austl. Pty Ltd. v. Int'l Game Tech.*,
    521 F.3d 1328 (Fed. Cir. 2008)....................................................................5

*Exxon Chemical Patents, Inc. v. Lubrizol Corp.,*
    64 F.3d 1553 (Fed. Cir. 1995)....................................................................14

*Farstone Tech., Inc. v. Apple Inc.,*
    2015 WL 5898273 (C.D. Cal. Oct. 8, 2015)................................................4

*GoDaddy.com LLC v. RPost Commc'ns Ltd.,*
    No. 14-cv-00126, 2016 WL 212676 (D. Ariz. Jan. 19, 2016)....................4

*GPNE Corp. v. Apple Inc.,*
    830 F.3d 1365 (Fed. Cir. 2016).............................................................13, 16

*Jack Guttman, Inc. v. Kopykake Enterprises, Inc.,*
    302 F.3d 1352 (Fed. Cir. 2002)..................................................................18

*Konami Gaming, Inc. v. Marks Studios, LLC,*
    2017 WL 3174905 (D. Nev. Jul. 25, 2017) .................................................4

*Medrad, Inc. v. MRI Devices Corp.,*
    401 F.3d 1313 (Fed. Cir.2005)....................................................................16

*Phillips v. AWK Corp.,*
    415 F.3d 1303 (Fed. Cir. 2005).......................................................3, 13, 15

*Rain Computing, Inc. v. Samsung Electronics America, Inc.,*
    – F. 3d –, 2021 WL 786361 (Fed. Cir. Mar. 2, 2021) ................................5

*Sony Corp. v. Iancu,*
    924 F.3d 1235 (Fed. Cir. 2019)....................................................................7

*Verizon Servs. Corp. v. Vonage Holdings Corp.,*
    503 F.3d 1295 (Fed. Cir. 2007)..............................................................13, 16

*Williamson v. Citrix Online, LLC,*
    792 .3d 1339 (Fed. Cir. 2015).......................................................................3

*WMS Gaming, Inc. v. Int'l Game Tech.*,
    184 F.3d 1339 (Fed. Cir. 1999)...................................................................................5

*Zeroclick LLC v. Apple Inc.*,
    891 F.3d 1003 (Fed. Cir. 2018)...........................................................................4, 5

# I.    INTRODUCTION

VDPP's Opening Claim Construction Brief (ECF No. 27) advocates across-the-board adoption of the ordinary meaning of all the claim terms presented for construction, but VDPP fails to set forth what it contends those ordinary meanings are. VDPP nowhere explains what one of ordinary skill in the art would believe the terms' ordinary meaning to be in light of the intrinsic record. It is a kick-the-can-down-the-road approach to maintain this lawsuit against VIZIO based on infringement theories that have nothing to do with the disclosure of the Asserted Patents or the claims recited therein.

VDPP argues that the Asserted Patents are directed to "a technique for creating sharper video images." (VDPP's Opening Brief at 1.) If this were true, one would expect to see disclosure in the Asserted Patents for such techniques. And because the Asserted Patents claim specialized storage and processors specifically "adapted to" the storage, generation, and manipulation of video frames from a video stream, one would also expect a disclosure of how to adapt storage and processors to perform the recited functions. But there is no such disclosure. Instead, VDPP can only point to the word "storage" for storage of control signals to control the clarity and darkening of the lens corresponding to each eye on 3D glasses. Such storage and handling of *control signals* has nothing to do with storage and processors for *video frame* manipulation of frames from a video stream as recited in the claims.

VDPP offers little, if any, argument, in support of its positions for the remainder of the disputed claim terms—even those for which VDPP does not simply incant "ordinary meaning" as the construction. But mere appeal to "ordinary meaning" does nothing to inform the Court about what VDPP believes the ordinary meaning is. VIZIO on the other hand has set forth its constructions, which capture the ordinary meaning as understood by one of ordinary skill in the art in light of the intrinsic record. And despite VDPP's accusation, none of VIZIO's proposed constructions limit the claims to any particular disclosed embodiments but, rather, only to the meaning of the terms themselves.

This Responsive Brief addresses only 10 disputed terms consistent with the Court's order limiting claim construction to 10 terms. (Order, ECF No. 28.) VIZIO also addresses claim term no. 12 in place of now-undisputed claim term no. 8, if the Court is amenable to the substitution. (*See* ECF No. 30.)

Lastly, due to the cursory nature of VDPP's Opening Brief and its failure to address many of the claim terms, if VDPP discloses its argument for the claim terms only in its Responsive Brief, then VIZIO will effectively have been deprived of a full and fair opportunity to respond to VDPP's arguments. Accordingly, VIZIO requests that the Court disregard any VDPP position regarding the disputed claim terms that is disclosed for the first time in its Responsive Brief and to which VIZIO is unable to respond.

## II.     RESPONSIVE ARGUMENT REGARDING DISPUTED CLAIM TERMS

**A.    VDPP's Opening Brief reinforces the indefiniteness of the claimed "storage" and "processor" specifically "adapted to" perform the claimed functions because VDPP fails to identify any disclosure for storage or processors performing those functions.**

| Term | VDPP's Construction | VIZIO's Construction |
| --- | --- | --- |
| **1.** "a storage adapted to store one or more image frames" | Ordinary meaning | Indefinite |
| **2.** "a storage adapted to store a sequence of images frames" | Ordinary meaning | Indefinite |
| **3.** "a processor adapted to [perform the recited functional limitations]" | Ordinary meaning | Indefinite |
| **4.** "a processor communicably coupled to the storage and adapted to [perform the recited functional limitations]" | Ordinary meaning | Indefinite |

The purpose of claim construction is to make an objective assessment about what a person of ordinary skill in the art "at the time of the invention" would have understood

by the words in the claims. *Phillips v. AWK Corp.*, 415 F.3d 1303, 1313 (Fed. Cir. 2005) (en banc). VDPP's Opening Brief asserts that those of skill in the art would have understood the structure of "a storage adapted to" and "a processor adapted to" perform the various functions recited in the claims. But the claimed functions are not those of generic storage or processors. Instead, the asserted claims are directed to storage and processors specially adapted to perform specific, detailed, and allegedly novel video manipulations. But there is no disclosure in the Asserted Patents—and especially not from the time of the alleged invention—regarding any such specially adapted storage and processors.

       **1.**    **VDPP does not show that the terms "storage" and "processor" as used in the claims recite sufficient structure for the claimed storage and processors specially adapted to particular storage and video frame manipulation functions.**

VDPP argues that "storage" and "processor" should not be construed as means-plus-function claim terms, but it provides no analysis or reason why they should not be so construed, especially in light of the lack of any surrounding claim language to give sufficiently definite structure to those terms and the lack of any disclosure in the Asserted Patents describing any structure able to perform the recited functions.

While a patent may avoid the term "means" in an attempt to avoid claim interpretation under means-plus-function claiming, substitution of another generic, nonce word that fails to recite sufficiently definite structure in its place does not avoid interpretation of the term as a means-plus-function term. *See Williamson v. Citrix Online, LLC,* 792 .3d 1339, 1350 (Fed. Cir. 2015). In the context of the asserted claims, the only purported structure is generic reference to "a storage" and "a processor." But the Asserted Patents do not claim a generic storage or a generic processor. Rather, as claimed, the storage and processor are explicitly "adapted to" perform the various functions recited under each term. There is no indication in the claims themselves what specific structures or algorithms cause the storage or the processor to be "adapted to" perform those

functions. Accordingly, these are the exact type of generic and functional nonce words that trigger interpretation as means-plus-function claims. Such generic recitations of processors, modules, controllers, mechanisms, devices, etc., are consistently found to be functional claiming subject to interpretation under § 112 ¶ 6. *See also GoDaddy.com LLC v. RPost Commc'ns Ltd.*, No. 14-cv-00126, 2016 WL 212676, at \*56 (D. Ariz. Jan. 19, 2016) (finding "processor" subject to interpretation as means-plus-function), *aff'd*, 685 F. App'x 992 (Fed. Cir. 2017); *Konami Gaming, Inc. v. Marks Studios, LLC,* 2017 WL 3174905, \*2 (D. Nev. Jul. 25, 2017) (finding "game controller" as a stand-in for "means"); *Farstone Tech., Inc. v. Apple Inc.,* 2015 WL 5898273, \*3-4 (C.D. Cal. Oct. 8, 2015) ("processing system" subject to interpretation as means-plus-function).

VDPP argues that § 112, para. 6 does not apply to the terms, relying on *Zeroclick LLC v. Apple Inc.*, 891 F.3d 1003 (Fed. Cir. 2018). VDPP argues that the Federal Circuit in *Zeroclick* reversed the district court for failing to interpret the term "program" in its context. VDPP asks the Court to ignore the context of the claims here, which specifically require, for example, a processor expressly "adapted to"

> "generate a modified image frame by performing at least one of expanding the first image frame, shrinking the first image frame, removing a portion of the first image frame, stitching together the first image frame with a second image frame, inserting a selected image into the first image frame, and reshaping the first image frame, wherein the modified image frame is different from the first image frame." ('444 Patent, claim 26, col. 50, lns. 43–49.)

This claimed processor is no generic, off-the-shelf processor, in contrast to *Zeroclick*, where the Federal Circuit concluded that the context demonstrated that claim term "program" simply referred to an "*existing program*." 891 F.3d at 891 F.3d at 1008. In *Zeroclick*, the claims were not to the existing program itself but rather to a graphical user interface. The trial court, therefore, appeared to be interpreting the claim terms in a vacuum and not in the context of the claims and specification, which fully described the claimed graphical user interfaces. *Id.* Specifically, the written description provided

distinctions between the prior art graphical user interfaces and the improvements to such interfaces in the claimed invention. *Id.*

The asserted claims, in contrast, do not set forth any structural description of the claimed, specialized storage and processor other than by recitation of the functions they perform. And, as set forth further below, the disclosures of the Asserted Patents— especially when viewed as of the asserted date of the invention—do not teach, or even mention the words "storage" or "processor"; or the improvements to them over the prior art. Nor does VDPP's Opening Brief provide any citations to the disclosure of the Asserted Patents showing context to establish sufficiently definite structure for each of the terms. This lack of structure is fatal to VDPP's argument that § 112, para. 6 does not apply. *See Williamson,* 792 F.3d 1339, 1351 (noting that "the fact that one of skill in the art could program a computer to perform the recited functions cannot create structure where none otherwise is disclosed.")

Recently, the Federal Circuit addressed this same issue again and found that the claim term "user identification module" was a means-plus-function term subject to § 112 ¶ 6. *Rain Computing, Inc. v. Samsung Electronics America, Inc.,* – F. 3d –, 2021 WL 786361 (Fed. Cir. Mar. 2, 2021). Relying on cases holding that general-purpose computers or microprocessors that require an algorithm to perform a claimed function are to be interpreted as means-plus-function terms, the appellate court found that the claim's use of the word "module" was the same black box recitation of structure found in *Williamson* and concluded that the claim language did not provide any structure for performing the claimed function. *Id.* at *2–*3 (citing *Aristocrat Techs. Austl. Pty Ltd. v. Int'l Game Tech.*, 521 F.3d 1328, 1333 (Fed. Cir. 2008) and *WMS Gaming, Inc. v. Int'l Game Tech.*, 184 F.3d 1339, 1349 (Fed. Cir. 1999)). The specification did "not impart any structural significance to the term" and "[did] not even mention a 'user identification module.'" *Id.* The Court rejected plaintiff's argument and found that the term was a means-plus-function term.

Similar to the Court's decision in *Rain Computing,* the Asserted Patents only use "storage" and "processor" as black box recitations of structure; the Asserted Patents do not disclose or describe any specialized device that is able to perform the complex and specific functions that are set forth in detail in the asserted claims.

Because the claims themselves do not set forth sufficiently definite structure for a storage or a processor to perform the associated functional requirements, the rebuttable presumption is overcome and § 112 ¶ 6 applies. As discussed below, because the specification also does not disclose how to adapt a specialized device to perform any of the claimed functions, the asserted claims are also indefinite.

**2.    The specification fails to describe structure to perform the claimed functions for the generic computer terms "storage" and "processor."**

Once § 112 ¶ 6 is found to apply, courts first "identify the claimed function" and then "determine what structure, if any, disclosed in the specification corresponds to the claimed function," in a two-part test to determine whether a means-plus-function term is indefinite. *Williamson,* 792 F.3d at 1351. VDPP argues that the Asserted Patents teach a storage and a processor, but VDPP's citations are not to any storage or processor that is disclosed as performing the claimed functions. Moreover, VDPP's citations are not to disclosure of the Asserted Patents at the purported time of the inventions (i.e., January 2002), but rather to additions to the written description made years later.

The asserted claims of the '444 Patent (nos. 1 and 27) claim a specialized storage and processor that must be able to perform a lengthy list of functions, including:

1.  storage of image frames;

2.  obtaining images frames from a video stream;

3.  expansion of an image frame to generate a modified image frame;

4.  generation of a bridge frame;

5.  blending the modified image frame and bridge frame; and/or

6.  display of the modified image frame and bridge frame.

Asserted claim 2 of the '922 Patent requires a storage and processor perform the following functions:

1.  storage of image frames;
2.  obtaining first and second image frames from a video stream;
3.  generation of a first and second modified image frames by expanding first and second image frames;
4.  generation of a bridge frame; and
5.  display of the first modified image frame, bridge frame, and second modified image frame.

And asserted claim 6 of the '380 Patent recites the functions for the specialized storage and processor as the following:

1.  storing a sequence of image frames;
2.  obtaining first and second image frames from the sequence of image frames;
3.  expanding the first and second image frames to generate modified first and second image frames;
4.  combining the modified first and second image frames to generate a modified combined image frame; and
5.  display of the modified combined image frame.

Under the second step of the construing a means-plus-function term, the "structure disclosed in the specification is corresponding structure only if the specification or prosecution history clearly links or associates the structure to the function recited in the claim." *Sony Corp. v. Iancu,* 924 F.3d 1235, 1239 (Fed. Cir. 2019).

In its Opening Brief, VDPP cites Figures 4 and 8 as evidence that there is sufficient structure disclosed for the terms. (VDPP Opening Brief at 4–6.) But these figures do not disclose or describe storage or processors that can perform any, much less all, of the claimed functions. Instead Figures 4 and 8 relate to the control of lenses on 3D glasses. The control of 3D glasses has nothing to do with storage of images frames or manipulation of video frames. Rather the Figure 4 flowchart shows how the glass lenses

of 3D glasses are controlled through storage and management of synchronization and control *signals*, not images or video frames. ('444 Patent at col. 23, lns. 22–47) Figure 8 is noted in the Asserted Patents as being similar to Figure 4, differing only in that it has "Left Lens Multilayer Control" circuitry and "Right Lens Multilayer Control" circuitry that is used to control two layers of the lenses for the 3D glasses. ('444 Patent at col. 25, lines 28–53)

Nowhere in this description does the processor "obtain a first image frame …"; "expand the first image frame …"; "generate a bridge frame …"; "blend the modified image frame …"; "display the blended modified image frame," which are only some of the specific functions that must be performed by the processor. While the description of the figures includes passing reference to signals generally being "processed," the description does not disclose an actual processor, and, importantly, does not disclose a processor to perform the claimed functions.

VDPP's Opening Brief also references portions of the '922 Patent and '380 Patent as including "additional Figures and teaching regarding the storage and processor." (VDPP's Opening Brief at 6–8.) But VDPP provides no meaningful assessment or description about how these sections disclose structure for a specialized storage and processor to perform each and every one of the claimed functions. Again, for example, VDPP's cited portions discuss control circuits that are used to control the filter for glasses lenses. (*See* '922 Patent at col. 38, lns. 34–47.) Additionally, Figure 36 literally shows no more than empty boxes, and the cited text merely references a "processor … coupled to a data storage" that can execute program instructions, but there is no disclosure of that actual program or how the empty, black boxes of Figure 36 possibly achieve the claimed functions. And while Figure 58 is purported to be an algorithm, in fact it is no more 4 boxes that paraphrase the claimed functions, without any disclosure of the steps of an algorithm to perform them.

Most importantly, however, all the disclosure about control signals for 3D glasses as well as the additional disclosure of the '922 and '380 Patents, do not appear in the

original disclosure to which the VDPP alleges the asserted claims find their priority and support. VDPP's Opening Brief unequivocally states that "[t]he intrinsic record [for the asserted claims] reviewed by one of ordinary skill in the art is fixed in time as of January 2002." (VDPP Opening Brief at 1.) January 2002 was the filing date of the first application in the line of applications resulting in the Asserted Patents, and that first application issued as U.S. Patent No. 7,030,902 (attached hereto as Exhibit 7).[1]

The original disclosure in 2002 is far different from the disclosures of the Asserted Patents. *Compare* Exhibit 7 to the Asserted Patents. The modest '902 Patent included just 14 columns of text and only 13 figures—none of them Figures 4, 8, 36 or 58 cited in VDPP's Opening Brief. The '902 Patent's only mention of manipulating video frames was in connection with the illusions described in the Asserted Patents, known as Eternalisms. (Exh. 7 at col. 2, lns. 15–41.) There was nothing in the '902 Patent about a technique for creating "sharper video images," no mention of 3D glasses or circuits for controlling them, no mention of "storage," and no mention of "processors." Through an extensive set of continuation-in-part patent applications, the patent applicants added to the disclosures—primarily with respect to 3D glasses—and eventually arrived at the 60 figures and 116 columns of the '380 Patent.

Yet, for all that bloated disclosure, there is nothing to teach one of skill in the art how to make and use a storage and processor to perform the claimed functions. Instead, VDPP simply says that "the patents tell one of ordinary skill in the art to build a processor that executes the inventive steps to display a sharper video image," without citing any support at all. (VDPP's Opening Brief at 11.) Telling one of skill in the art to build a processor is one thing, but disclosure of a processor "adapted to" perform specific functions and teaching one of skill in the art *how* to build it is quite another. *See Williamson,* 792 F.3d 1339, 1351 (noting that "the fact that one of skill in the art could program a computer to perform the recited functions cannot create structure where none otherwise is disclosed.")

---

[1] VIZIO's Exhibits 1–6 were attached to VIZIO's Opening Brief.

There are no descriptions, examples, or discussions in the Asserted Patents of the structure of storage and processors for performance of the claimed functions. Thus, there is no link connecting use of storage or processors to performance of any of the functions. VDPP's Opening Brief does not identify any such portions of the written description from the asserted time of the invention. And VDPP's Responsive Brief will not either—because there are none. As a result, the Court should construe the "storage" and "processor" terms as means-plus-function terms and hold the asserted claims invalid for failure to disclose structure corresponding to the claimed functions.

**B.   VDPP offers no support or argument for an interpretation of "image frame" as anything less than a frame.**

| Term | VDPP's Construction | VIZIO's Construction |
|---|---|---|
| **5.** "image frame" | Ordinary meaning | "perceptible and complete image[s] of the full span of the entire frame" |

In the Joint Claim Construction and Prehearing Statement, VDPP indicated that it believes "image frame" should be construed as its plain and ordinary meaning, but VDPP failed to specifically address the term "image frame" in its opening brief. VDPP's infringement contentions indicate that VDPP believes that an image frame may be something less than a frame. VDPP's refusal to engage in claim construction by withholding what it contends the ordinary meaning of frame to be, and by not addressing the term in its opening brief, is a hide-the-ball litigation strategy that does nothing to address disputes about claim scope that must be resolved.

VDPP does not offer any evidence or argument in support of its position that the plain and ordinary meaning provides sufficient clarity to the term. Nor does VDPP proffer any explanation or clarification of what "image frame" means in the context of the Asserted Patents.

VDPP's infringement contentions assert that VIZIO's televisions infringe by "local dimming" (increasing or dimming the backlight behind zones of the television screen). But this relies on an interpretation of the term "image frame" that is not supported by the

Asserted Patents and is generally inconsistent with how they use that term. Simply asserting that the term "image frame" has its ordinary meaning does nothing to clarify the infringement issue, potentially leaving VDPP free to argue claim scope to the jury.

VIZIO again asserts that an "image frame" is a familiar term that connotes the entire or complete image or picture, typically rectangular, such as the image frames of a film strip. The Asserted Patents use the term in the same way.

VDPP's infringement contentions rely on a frame being something less than a frame, and avoidance of the construction issue only allows VDPP to maintain its overbroad interpretation of the Asserted Patents. Since VDPP has neither supported its proposed "construction" nor offered any specific reason as to why VIZIO's construction is incorrect, the Court should adopt VIZIO's construction as consistent with the plain and ordinary meaning of the term.

**C. VDPP's proposed construction is to eliminate the "frame" aspect of "bridge frame," but VDPP failed to support or at the very least to argue for adoption of its construction in its opening brief.**

| Term | VDPP's Construction | VIZIO's Construction |
|---|---|---|
| **6.** "bridge frame" | "a gap or interval between image frames, including an unlit screen" | "perceptible and complete image of the full span of the entire frame between two other perceptible and complete images of the full span of the entire frame" |

VDPP's position in the parties' Joint Claim Construction Statement indicates that the term "bridge frame" should be construed as "a gap or interval between image frames, including an unlit screen." However, VDPP does not address this construction at all in its opening brief and failed to proffer any evidence or argument in support of its proposal. On this basis alone, this Court should reject VDPP's proposed construction.

Nevertheless, the issue with VDPP's proposal is that it reads out the limitation that there be a "frame" at all. Instead, VDPP replaces the requirement for a "frame" with "a gap or interval," i.e., the absence of a frame. But the Asserted Patents do not support such

a construction. In the Asserted Patents, a "bridge frame" is referenced as being its own frame, one that is inserted between two other frames. This fact should be apparent from the term itself incorporating the word "frame." Moreover, the bridge frame affirmatively *is* something, and not just a void, or nothing. It is described as being generated, displayed, and combined with other frames, or having a specific color. And the Court need look no further than the language of the claims themselves to see these attributes of a bridge frame.

Simply adjusting the backlight of a screen between the display of two frames cannot be a bridge frame as it is described in the Asserted Patents. Furthermore, an "unlit screen" appears only once in the '444 Patent and is disclosed in connection with a "bridge interval," a separate and distinct disclosure from the "bridge frame." ('444 Patent at col. 4, lns. 48–51.)

VDPP argues only that VIZIO's use of the word "perceptible" in its proposed construction creates ambiguity and that the Asserted Patents do not include a requirement that "the image and blank image frames be 'perceptible.'" (VDPP's Opening Brief at 15–16.) Both points are without merit. First, VDPP fails to state why whether a frame is perceptible or not creates any ambiguity—VDPP only baldly makes the assertion. Second, VIZIO's proposal that the "bridge frame" be perceptible is consistent with the understanding of the bridge frame as used in the claim and as described in the specification of the Asserted Patents. Specifically, a bridge frame is purposefully displayed between two image frames in order to create optical illusions of movement and can be modified or combined with other images to produce different effects. ('444 Patent at col. 39, ln 59 – col. 40, ln 28.) The repetition of different frames, as disclosed in the Asserted Patents, is used to create the illusion of "Eternalism"; the effect may be noticed by a viewer as a "subtle flicker," a brief change, but a perceptible one nonetheless. ('444 Patent at col. 5, lns. 2–4.) The Asserted Patents specifically state that "[t]he present invention purposely makes flicker apparent …." (*Id.* at col. 40 lns. 25–26.) "When a patent ... describes the features of the 'present invention' as a whole, this description

limits the scope of the invention ….” *GPNE Corp. v. Apple Inc.*, 830 F.3d 1365, 1371 (Fed. Cir. 2016) (quoting *Verizon Servs. Corp. v. Vonage Holdings Corp.*, 503 F.3d 1295, 1308 (Fed. Cir. 2007).) Thus, the bridge frame that is presented between image frames to create the disclosed visual effect must, in some way, be perceptible by a user. And the claims themselves require “display” of the bridge frame. (’444 Patent at claim 26; ’922 Patent at claim 1.)

VDPP makes no other argument or objection to the remainder of VIZIO’s proposed construction of the term bridge frame, which includes clarification that the bridge frame also be a “frame,” in other words a “complete image of the full span of the entire frame between two other perceptible and complete images of the full span of the entire frame.”

Accordingly, VIZIO requests that the Court adopt its construction for “bridge frame” as most naturally aligning with the meaning of that term as used in the Asserted Patents. Construing this term now will significantly resolve the claim scope issue so that it is not re-raised when issues of infringement are decided later.

**D.  VDPP offers no support or argument for an interpretation of “is different from” to refer to separate frames with the same image content.**

| Term | VDPP's Construction | VIZIO's Construction |
|---|---|---|
| **7.** “is different from” | Ordinary meaning | “has dissimilar images elements or repositioned image elements” |

Again, VDPP proposes that the phrase “is different from” should receive its ordinary meaning, without disclosing what it believes that meaning is be from the perspective of a person of ordinary skill in the art. VDPP’s Opening Brief also does not specifically address construction of this phrase or offer any evidence or argument in support of its position.

The ordinary meaning of a term is considered in the context of a person of ordinary skill in the art reading the term “in the context of the claim in which the disputed term appears, but [also] in the context of the entire patent, including the specification.” *Phillips,* 415 F.3d at 1313. The claim scope issue arises because VDPP’s apparent

position in its infringement contentions relies on an interpretation that the term "is different from" can include separate instances of the same image frames or image frames that appear the same but vary in size. But these interpretations and applications of the term "is different from" are not supported by the Asserted Patents and are generally inconsistent with how "different" frames are described therein.

VDPP offers no specific argument against VIZIO's proposed construction or specific reason why it is not in accordance with the ordinary meaning of the phrase as it would be understood in the context of the Asserted Patents.

The Asserted Patents, for example, recite a function for a processor to "expand the first image frame to generate a modified image frame, *wherein the modified image frame is different from the first image frame*." (*See*, *e.g.*, '422 Patent at claim 1 (emphasis added).) If the act of expansion alone was enough for the modified image frame to be *per se* different from the first image frame, then the additional requirement that the modified image frame be different than the first image frame would be redundant. But the Court should attempt to "give meaning to all the words in [the] claims." *See Exxon Chemical Patents, Inc. v. Lubrizol Corp.,* 64 F.3d 1553, 1557 (Fed. Cir. 1995) Thus, it is not enough to create the claimed modified image frame that the image frame only be expanded—it must also be "different." In this context, the "difference" refers to the image content of the image frames.

The disclosure of the Asserted Patents also makes clear that separate image frames can be the "same" because the disclosure describes separate images that have the "same" image elements. (*See,* '444 Patent at col. 5, lns. 22–29.) Thus, when the term "is different from" is used in the Asserted Patents, it is referring to images frames that are not the same—i.e., the content of the frames is dissimilar from one another. VIZIO's proposed construction—"has dissimilar image elements or repositioned image elements"—reflects the meaning of the term as it is used in the Asserted Patents. And VDPP offered no argument to the contrary.

In view of the above and to address the aspects of the claims that matter for the determination of the alleged infringement, VIZIO requests that the Court adopt its construction for "is different from" as most naturally aligning with the ordinary meaning of that term as used in the Asserted Patents.

**E.   The parties do not dispute the construction of claim term no. 8, "generate a bridge frame/blended modified image frame/modified combined image frame."**

The parties' do not have a present dispute over claim term no. 8 such that there is no need for the Court to resolve a claim-scope dispute through claim construction. VIZIO addresses claim term no. 12 in place of claim term no. 8, as the 10th term for construction, if the Court is amenable to the substitution.

**F.   VDPP offers no support or argument for an interpretation of "display" to include the absence of displaying image frames or bridge frames.**

| Term | VDPP's Construction | VIZIO's Construction |
|---|---|---|
| **9.** "display the blended modified image frame/bridge frame/modified combined image frame" | Ordinary meaning | "presentation of the [blended modified image frame/bridge frame/modified combined image frame] for perception by a viewer" |

Again, VDPP proposes that the phrase "display the blended modified image frame/bridge frame/modified combined image frame" should receive its ordinary meaning, without disclosing what it believes that should be from the perspective of a person of ordinary skill in the art. VDPP's Opening Brief also does not specifically address construction of this phrase or offer any evidence or argument in support of its position.

Because VDPP does not provide any support of its proposal or for rejection of VIZIO's proposal, the Court should simply deny VDPP's proposed construction for lack of proper support. *Phillips*, 415 F.3d at 1313 (citing *Medrad, Inc. v. MRI Devices Corp.*,

401 F.3d 1313, 1319 (Fed. Cir.2005)) ("We cannot look at the ordinary meaning of the term ... in a vacuum. Rather, we must look at the ordinary meaning in the context of the written description and the prosecution history.").

VIZIO's proposal, as set forth in its opening brief (ECF No. 26), requests that the term "display the blended modified image frame/bridge frame/modified combined image frame" be construed as the actual presentation of the frame for perception by a viewer. This construction is consistent with how the Asserted Patents describe the claimed image frames and bridge frames. The claimed invention uses a repetition of different frames to create the illusion of "Eternalism," and the effect may be noticed by a viewer simply as a "subtle flicker." ('444 Patent at col. 5, lns. 2–4.)  This repetition of viewing frames and "flicker" of the frames has an inherent requirement that the frames be affirmatively presented to an individual or user, rather than simply removing a frame by dimming or interrupting the display. The Asserted Patents also specifically state that "[t]he present invention purposely makes flicker apparent …." (*Id.* at col. 40 lns. 25–26.) And "When a patent ... describes the features of the 'present invention' as a whole, this description limits the scope of the invention …." *GPNE*, 830 F.3d at 1371 (quoting *Verizon*, 503 F.3d at 1308.).

The issue here is similar as that for the "bridge frame" term. VDPP's infringement contentions rely on the non-display of the image frames by turning off the backlight. So, VDPP's ordinary meaning for display must also include "non-display," a construction which VDPP completely fails to support.

The "display" of the claimed type of frame is just what it says it is—presentation of the frame for perception by the viewer, and VDPP offers no reason to interpret the phrase otherwise as part of claim construction. Accordingly, VIZIO respectfully requests the Court adopt its construction for this phrase.

**G.  VDPP offers no support or argument for an interpretation of "video stream" as anything other than the specific definition given in the Asserted Patents.**

| Term | VDPP's Construction | VIZIO's Construction |
|---|---|---|
| **10.** "Obtain a first image frame from a first video stream" | "obtain a first image frame from a sequence of moving visual images" | "obtain a first image frame from a collected sequence of image frames" |

VDPP contends that the Court should construe the term "obtain a first image frame from a first video stream" to mean "obtain a first image frame from a sequence of moving visual images." But as with most of the other disputed claim terms, VDPP's Opening Brief does not specifically address construction of this phrase or offer any evidence or argument in support of its position that the patents' explicit definition should be rejected.

VDPP's proposed construction for the term is not supported by the written description or claims of the Asserted Patents. The specification of the '922 Patent specifically defines "a video stream [as] a sequence of video *frames*." ('922 Patent at col. 60, lns. 40–43 (emphasis added).) The Asserted Patents additionally discuss video frames (not merely images) in the context of successive frames found in a video stream ('922 Patent at col. 58, lns 34–38.). Expanding "video stream" to mean a sequence of mere images is not supported by the claims or written description and improperly broadens the scope of the patents. VDPP's proposed construction should be rejected, and VIZIO's should be adopted.

**H.   VDPP offers no support or even argument for an interpretation of "blending" as anything other than the Asserted Patents' express definition for the term as "superimposing."**

| Term | VDPP's Construction | VIZIO's Construction |
|---|---|---|
| **12.** "blend the modified image frame with the bridge frame to generate a blended modified image frame" | Ordinary meaning according to claim language, "blend the modified image frame with the bridge frame to generate a blended modified image frame" | "superimpose or merge the images of the modified image frame and the bridge frame to produce a blended image over the full span of the entire frame" |

Yet again, VDPP contends that the Court should construe the phrase "blend the modified image frame with the bridge frame to generate a blended modified image frame" as its ordinary meaning without stating what that meaning is and without any argument against VIZIO's proposed construction, which is the same as the explicit definition in the specification of the Asserted Patents.

In no uncertain terms, the specification states that "the term 'blending' as used in the specification and claims can also be called superimposing, since one picture is merged with the other picture." ('444 Patent at col. 5, lns. 44–46; '380 Patent at col. 9, lns. 60-62.) This definition is dispositive and prevails over other possible definitions. *See 3M Innovative Properties Co. v. Avery Dennison Corp.*, 350 F.3d 1365, 1371 (Fed. Cir. 2003); *Jack Guttman, Inc. v. Kopykake Enterprises, Inc.*, 302 F.3d 1352, 1360–61 (Fed. Cir. 2002) ("Where, as here, the patentee has clearly defined a claim term, that definition usually is dispositive; it is the since best guide to the meaning of a disputed term.").

Since VDPP offers no reason to vary from the explicit definition given in the Asserted Patents, the Court should adopt that definition as set forth in VIZIO's proposed construction.

### III.   CONCLUSION

For the foregoing reasons, VDPP failed to provide adequate support for each of its proposed claim constructions. The Court should adopt VIZIO's proposed constructions and reject VDPP's proposed constructions.

Dated: March 15, 2021                      MASCHOFF BRENNAN

                              By:   */s/ Jared J. Braithwaite*
                                    Charles S. Barquist
                                    Lee Cheng
                                    Jared J. Braithwaite

                                    Attorneys for Defendant VIZIO, Inc.