1  MASCHOFF BRENNAN
2  Charles S. Barquist (SBN 133785)
       Email: cbarquist@mabr.com
3  L. Rex Sears (SBN 294533)
       Email: rsears@mabr.com
4  Erynn L. Embree (SBN 312131)
       Email: eembree@mabr.com
5  300 S. Grand Ave., Suite 1400
6  Los Angeles, California 90071
7  Telephone:  (949) 202-1900
   Facsimile:  (949) 453-1104
8
9  Attorneys for Defendant VIZIO, Inc.

10
11              **UNITED STATES DISTRICT COURT**

               **CENTRAL DISTRICT OF CALIFORNIA**
12

13

14  VDPP LLC,                           Case No.  8:20-CV-00030−JVS−KES

15              Plaintiff,              **DEFENDANT VIZIO, INC.'S**
                                        **MOTION FOR PARTIAL**
16       v.                             **SUMMARY JUDGMENT**
                                        **AGAINST PRIORITY CLAIMS**
17  VIZIO, INC.,
                                        DATE:  October 17, 2022
18                                      TIME:   1:30 p.m.
19              Defendant.

20

21

22

23

24

25

26

27

28

## NOTICE OF MOTION AND MOTION

PLEASE TAKE NOTICE that on October 17, 2022, at 1:30 p.m. or as soon thereafter as the parties may be heard, defendant VIZIO, Inc. will (and hereby does) move the above-entitled Court, Hon. James V. Selna presiding, for summary judgment that the asserted claims of the three patents in suit are not entitled to the benefit of the filing dates of any of the earlier applications to which they claim priority, because the earlier applications do not contain written description support for the claimed inventions. More specifically, VIZIO seeks summary judgment that the effective filing date of claims 1 and 27 of U.S. Patent No. 9,699,444 is no earlier than July 22, 2016; the effective filing date of claim 2 of U.S. Patent No. 9,948,922 is no earlier than August 22, 2017; and the effective filing date of claim 6 of U.S. Patent No. 10,021,380 is no earlier than February 28, 2018.

This motion is and will be based on the points and authorities set forth below; the accompanying Statement of Uncontroverted Facts and Conclusions of Law ("SUF"), the accompanying declarations of Clifford Reader ("Reader decl.") and L. Rex Sears ("Sears decl.") and exhibits thereto; and such other argument and evidence as may be presented prior to or at the hearing on the motion.

This motion is made following a conference of counsel pursuant to L.R. 7-3 that took place on September 12, 2022.

Dated: September 19, 2022             MASCHOFF BRENNAN

By:   _/s/ L. Rex Sears_
      Charles S. Barquist
      L. Rex Sears
      Erynn L. Embree

      Attorneys for Defendant VIZIO, Inc.

# TABLE OF CONTENTS

NOTICE OF MOTION AND MOTION ............................................................ ii

TABLE OF CONTENTS ............................................................................... iii

MEMORANDUM ........................................................................................... 1

I.      LEGAL FRAMEWORK ...................................................................... 2

        A.      Summary judgment. ................................................................. 2

        B.      Priority under 35 U.S.C. § 120. .............................................. 3

        C.      Written description. ................................................................. 4

        D.      Burdens. .................................................................................... 6

II.     ADDITIONAL BACKGROUND ........................................................ 7

        A.      Mr. Jacobs' "inventions" and Mr. Karpf's patent factory. ........... 7

        B.      Selections from the patent family tree. ................................... 9

III.    ARGUMENT ..................................................................................... 10

        A.      The asserted claims of the '444 patent are not entitled to the benefit of any priority date earlier than July 22, 2016, when the application on which that patent issued was filed. ............................................................... 11

                1.      A processor adapted to obtain image frames from a video stream was not disclosed prior to September 10, 2015. ..................................... 12

                2.      A processor adapted to generate a modified image frame by expanding an image frame was not disclosed prior to July 22, 2016. 12

        B.      Claim 2 of the '922 patent is not entitled to the benefit of any priority date earlier than August 22, 2017, when the application on which that patent issued was filed. ......................................................................... 14

                1.      A processor adapted to obtain first *and* second image frames from the same video stream was not disclosed prior to August 22, 2017. ......... 15

                2.      A processor adapted to display successive expansion-generated modified image frames, separated by a black bridge frame, was not disclosed prior to August 22, 2017. ................................................. 15

      C.     Claim 6 of the '380 patent is not entitled to the benefit of any priority date earlier than February 28, 2018, when the application on which that patent issued was filed...........................................................................................16

IV.     CONCLUSION ...............................................................................17

# TABLE OF AUTHORITIES

**Cases**

*Anderson v. Liberty Lobby, Inc.*,
477 U.S. 242 (1986)...................................................................................2

*Bradford Co. v. ConTeyor North America, Inc.*,
603 F.3d 1262 (Fed. Cir. 2010) .................................................................6

*Celotex Corp. v. Catrett*,
477 U.S. 317 (1986)...................................................................................2

*D Three Enterprises, LLC v. SunModo Corp.*,
890 F.3d 1042 (Fed. Cir. 2018) .............................................................5, 6

*In re Daniels*,
144 F.3d 1452 (Fed. Cir. 1998) .................................................................6

*Dynamic Drinkware, LLC v. National Graphics, Inc.*,
800 F.3d 1375 (Fed. Cir. 2015) .................................................................6

*Lockwood v. American Airlines, Inc.*,
107 F.3d 1565 (Fed. Cir. 1997) .................................................................5

*Natural Alternatives International, Inc. v. Iancu*,
904 F.3d 1375 (Fed. Cir. 2018) .................................................................6

*Novartis Pharmaceuticals, Corp. v. Accord Healthcare, Inc.*,
38 F.4th 1013 (Fed. Cir. 2022) .................................................................5

*In re NTP, Inc.*,
654 F.3d 1268 (Fed. Cir. 2011) .................................................................4

*Pfaff v. Wells Electronics, Inc.*,
525 U.S. 55 (1998).....................................................................................5

*PowerOasis, Inc. v. T-Mobile USA, Inc.*,
522 F.3d 1299 (Fed. Cir. 2008) .............................................................6, 7

*Reiffin v. Microsoft Corp.*,
214 F.3d 1342 (Fed. Cir. 2000) .................................................................4

*Research Corp. Technologies v. Microsoft Corp.*,
627 F.3d 859 (Fed. Cir. 2010) ...............................................................2, 7

*Santarus, Inc. v. Par Pharmaceutical, Inc.*,
   720 F. Supp. 2d 427 (D. Del. 2010) ................................................................5

*Technology Licensing Corp. v. Videotek, Inc.*,
   545 F.3d 1316 (Fed. Cir. 2008) ...............................................................4, 6

*Transco Products Inc. v. Performance Contracting, Inc.*,
   38 F.3d 551 (Fed. Cir. 1994) ......................................................................3

*Tronzo v. Biomet, Inc.*,
   156 F.3d 1154 (Fed. Cir. 1998) ...............................................4, 7, 11, 13

**Statutes**

35 U.S.C. § 112 ................................................................................4, 6

35 U.S.C. § 119 ................................................................................3, 6

35 U.S.C. § 120 ...........................................................................3, 4, 6

**Rules**

Federal Rule of Civil Procedure 56 .........................................................2

# MEMORANDUM

Plaintiff VDPP LLC has been telling different stories to different audiences. In claim construction briefing here, VDPP told this Court that its asserted patents "claim a technique for creating sharper video images." (ECF 27 at 1.) On appeal, VDPP told the Federal Circuit that "[t]he patent claims cover an apparatus," rather than a technique—for "produc[ing] Eternalisms,"[1] rather than sharper video images. (Sears decl. exh. 1 at 7.)

Each story speaks to a different truth: the story VDPP told *this* Court speaks to VDPP's infringement theory, while the story VDPP told the Federal Circuit speaks to what, if anything, the named inventor actually invented. This disconnect between invention and infringement theory manifests itself in the long course of patent prosecution that began with the filing of a provisional patent application in 2001, focused on eternalisms—and which eventually yielded the three patents in suit, whose claims have nothing to do with eternalisms, in 2017 and 2018.

VDPP claims that the patents in suit are entitled to the benefit of a 2002 filing date, through a long chain of intervening applications. But *none* of the patents in suit is entitled to the benefit of *any* of its progenitors' filing dates because the "inventions" they claim were not disclosed in those earlier applications. Instead, due to the evolution of the specification from 16 columns and 13 figures, in the first in the chain, to 116 columns and 59 figures, in the latest, the patents in suit can reach back no further than the actual filing dates of their own respective applications.

At the August 1, 2022 status and scheduling conference, VIZIO's counsel reported his client's view that a "partial summary judgment motion early on to address the priority issue would be very helpful"; VDPP's counsel conceded, "[p]erhaps that would be useful as far as narrowing the issues"; and the Court concluded: "I think that would be helpful" because "it would take the priority date out of play. Whatever it is, we'll know it." (ECF 55 at 4:20–22; 5:18–21.) Accordingly, VIZIO now moves the Court for partial summary

---

[1] As the name implies, eternalisms involve an "illusion of continuous movement." (Sears decl. exh. 2 at 1.)

1  judgment that none of the asserted claims, in any of the patents in suit, is entitled to the

2  benefit of the filing date of any earlier application in the chain—viz., July 22, 2016 for

3  claims 1 and 27 of U.S. Patent No. 9,699,444, August 22, 2017 for claim 2 of U.S. Patent

4  No. 9,948,922, and February 28, 2018 for claim 6 of U.S. Patent No. 10,021,380.

5                              **I.    LEGAL FRAMEWORK**

6  **A.    Summary judgment.**

7          Federal Rule of Civil Procedure 56(a) authorizes VIZIO to seek and the Court to

8  grant summary judgment on "part of" its invalidity defense. *See id.* ("A party may move

9  for summary judgment, identifying … the part of each … defense — on which summary

10  judgment is sought. The court shall grant summary judgment if the movant shows that

11  there is no genuine dispute as to any material fact and the movant is entitled to judgment

12  as a matter of law."). That includes partial summary judgment as to the effective filing

13  date of the asserted claims of VDPP's patents, because that date determines the scope of

14  the prior art that VIZIO may rely on to prove invalidity. *See, e.g., Research Corp. Techs.*

15  *v. Microsoft Corp.*, 627 F.3d 859, 870, 872 (Fed. Cir. 2010) ("affirm[ing] the district

16  court's decision," on "Microsoft's Motion for Partial Summary Judgment that the

17  Asserted Claims of the '772 patent are not Entitled to the Effective Filing Date of the

18  1991 or 1990 Applications under 35 U.S.C. § 120," "that claims 4 and 63 of the '772

19  patent are not entitled to claim the benefit of their parent applications' filing dates").

20          The moving party bears the initial burden of showing "that there is no genuine

21  dispute as to any material fact," *see* Fed. R. Civ. P. 56(a), but "with respect to an issue on

22  which the nonmoving party bears the burden of proof," "the burden on the moving party

23  may be discharged by 'showing'—that is, pointing out to the district court—that there is

24  an absence of evidence to support the nonmoving party's case," *Celotex Corp. v. Catrett*,

25  477 U.S. 317, 325 (1986). More generally, "in ruling on a motion for summary judgment,

26  the judge must view the evidence presented through the prism of the substantive

27  evidentiary burden." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 254 (1986).

28

**B.    Priority under 35 U.S.C. § 120.**

When certain conditions are met: "[a]n application for patent for an invention disclosed in the manner provided by section 112(a) … in an application previously filed in the United States … shall have the same effect, as to such invention, as though filed on the date of the prior application." 35 U.S.C. § 120. A similar rule governs priority claims to *provisional* patent applications. *See* 35 U.S.C. § 119(e)(1) ("An application for patent … for an invention disclosed in the manner provided by section 112(a) … in a provisional application … shall have the same effect, as to such invention, as though filed on the date of the provisional application … if the application for patent … is filed not later than 12 months after the date on which the provisional application …"). Each of VDPP's patents in suit tries to take advantage of those rules by claiming priority, through a dozen or so intervening generations of non-provisional applications, to a provisional application filed on January 23, 2001. In discovery, however, VDPP has dropped its reliance on the ancestral provisional application and asserts priority only to the first non-provisional application in the chain, which was filed on January 22, 2002 and later issued as U.S. Patent No. 7,030,902.

"[T]here are various types of 'continuing' applications that one may file at the PTO. An applicant may file a continuation, divisional, or continuation-in-part (CIP) application of a prior application, all of which the PTO characterizes as 'continuing' applications." *Transco Prod. Inc. v. Performance Contracting, Inc.*, 38 F.3d 551, 555 (Fed. Cir. 1994) (citations omitted). "'Continuation' and 'divisional' applications … are both continuing applications based on the same disclosure as an earlier application," while "[a] 'CIP' application … contain[s] a portion or all of the disclosure of an earlier application together with added matter not present in that earlier application." *Id.* VDPP's priority chains include all three types of continuing applications, predominantly CIPs.

But "the expressions 'continuation,' 'divisional,' and 'continuation-in-part' are merely terms used for administrative convenience." *Id.* at 556. Whichever administrative label is used, "a patent's claims are not entitled to an earlier priority date merely because

the patentee claims priority. … Rather, for a patent's claims to be entitled to an earlier priority date, the patentee must demonstrate that the claims meet the requirements of 35 U.S.C. § 120." *In re NTP, Inc.*, 654 F.3d 1268, 1276 (Fed. Cir. 2011). Those requirements include that the invention be "disclosed in the manner provided by section 112(a)," by the parent to which priority is claimed. *See* 35 U.S.C. § 120.

> In essence, this means that in a chain of continuing applications, a claim in a later application receives the benefit of the filing date of an earlier application so long as the disclosure in the earlier application meets the requirements of 35 U.S.C. § 112, ¶ 1 [now § 112(a)], including the written description requirement, with respect to that claim.

*Technology Licensing Corp. v. Videotek, Inc.*, 545 F.3d 1316, 1326 (Fed. Cir. 2008); *see also Tronzo v. Biomet, Inc.*, 156 F.3d 1154, 1158 (Fed. Cir. 1998) ("For a claim in a later-filed application to be entitled to the filing date of an earlier application under 35 U.S.C. § 120 (1994), the earlier application must comply with the written description requirement of 35 U.S.C. § 112, ¶ 1 (1994).").

**C.   Written description.**

To meet the written description requirement:

> the disclosure of the earlier application, the parent, must reasonably convey to one of skill in the art that the inventor possessed the later-claimed subject matter at the time the parent application was filed. A disclosure in a parent application that merely renders the later-claimed invention obvious is not sufficient to meet the written description requirement; the disclosure must describe the claimed invention with all its limitations.

*Tronzo*, 156 F.3d at 1158 (citations omitted). The purpose of the written description requirement "is to ensure that the scope of the right to exclude, as set forth in the claims, does not overreach the scope of the inventor's contribution to the field of art as described in the patent specification." *Reiffin v. Microsoft Corp.*,

214 F.3d 1342, 1345 (Fed. Cir. 2000). "[T]he patent system represents a carefully crafted bargain that encourages both the creation and the public disclosure of new and useful advances in technology, in return for an exclusive monopoly for a limited period of time," *Pfaff v. Wells Elecs., Inc.*, 525 U.S. 55, 63 (1998); the written description requirement codifies that bargain.

Accordingly, the benefit of a parent's filing date cannot be obtained for "subject matter which is not disclosed" in the parent, "but would be obvious over what is expressly disclosed" in the parent. *Lockwood v. American Airlines, Inc.*, 107 F.3d 1565, 1571–72 (Fed. Cir. 1997). Priority "extends only to that which is [expressly] disclosed," and "all the limitations must appear in the specification." *Id.* at 1572. "It is not sufficient for purposes of the written description requirement … that the disclosure, when combined with the knowledge in the art, would lead one to speculate as to modifications that the inventor might have envisioned, but failed to disclose." *Id.*

"Silence is generally not disclosure," and the written description requirement cannot be satisfied by "implicit disclosure" or "simple disregard of the presence or absence of a limitation." *Novartis Pharms. Corp. v. Accord Healthcare, Inc.*, 38 F.4th 1013, 1017 (Fed. Cir. 2022). Thus, for example, in *Santarus, Inc. v. Par Pharmaceutical, Inc.*, the patentee argued that an ancestral application included written description support for a descendant claim's recitation of calcium *salts* because claims originally filed as part of the ancestral application referred to *calcium*. 720 F. Supp. 2d 427, 437 (D. Del. 2010), *aff'd in relevant part, rev'd on other grounds*, 694 F.3d 1344, 1347 ("The court's other rulings are affirmed."). That argument failed due to a lack of evidence that the ancestral "reference to 'calcium' refers to calcium salts rather than," say, "calcium ions." *Id.*

Nor is it enough for the parent to disclose the child's claim limitations, without regard to how they are arranged. For example, in *D Three Enterprises, LLC v. SunModo Corp.*, the specification of a parent application disclosed both a washer and a flashing, with the washer *above* the flashing. 890 F.3d 1042, 1052 (Fed. Cir. 2018). One child claimed a washer *below* the flashing, and another child claimed a washer that could be

1   either above or below the flashing. *Id.* The Federal Circuit ruled that the child claims
2   were not entitled to the parent's filing date. *Id.* Thus it is not enough for a parent to
3   disclose the pieces out of which a child's claims are assembled: rather, the parent must
4   also describe the particular arrangement claimed.

**D.   Burdens.**

6   Although patent applications have to assert whatever priority claims the applicant
7   wants to preserve, the PTO does not ordinarily test those assertions when it examines the
8   application. To the contrary, "[i]n the absence of an interference or rejection which would
9   require the PTO to make a determination of priority, the PTO does not make such
10   findings as a matter of course in prosecution." *PowerOasis, Inc. v. T-Mobile USA, Inc.*,
11   522 F.3d 1299, 1305 (Fed. Cir. 2008). As a result, evidentiary burdens are allocated
12   differently for priority than for other issues that implicate validity. One case put the point
13   this way: "claims in a patent … are not entitled to priority under § 120 … until the patent
14   owner *proves* entitlement to the PTO, the Board, or a federal court." *Natural Alternatives*
15   *Int'l, Inc. v. Iancu*, 904 F.3d 1375, 1380 (Fed. Cir. 2018). A more careful statement is
16   that the patentee bears the burden of production with regard to priority (including
17   subsidiary written-description issues), while the patent challenger bears the burden of
18   persuasion. *See Videotek*, 545 F.3d at 1328–29; *PowerOasis, Inc. v. T-Mobile USA, Inc.*,
19   522 F.3d 1299, 1304–05 (Fed. Cir. 2008); *see also Dynamic Drinkware, LLC v. National*
20   *Graphics, Inc.*, 800 F.3d 1375, 1379 (Fed. Cir. 2015) ("The … shifting burdens and
21   related priority claims under § 120 in district court litigation parallel the shifting burdens
22   and related priority claims under § 119(e)(1) in *inter partes* reviews.").

23   "Entitlement to priority under § 120 is a matter of law." *In re Daniels,* 144 F.3d
24   1452, 1455 (Fed. Cir. 1998). "However, determination whether a priority document
25   contains sufficient disclosure to comply with the written description aspect of 35 U.S.C. §
26   112, first paragraph, is a question of fact." *Bradford Co. v. ConTeyor N. Am., Inc.*, 603
27   F.3d 1262, 1268 (Fed. Cir. 2010). Nonetheless, "[c]ompliance with the written
28   description requirement" is "amenable to summary judgment in cases where no

1   reasonable fact finder could return a verdict for the non-moving party." *PowerOasis*, 522

2   F.3d at 1307; *see also Research Corp. Techs.*, 627 F.3d at 872 (affirming summary

3   judgment "that claims … are not entitled to claim the benefit of their parent applications'

4   filing dates"); *cf. Tronzo*, 156 F.3d at 1158 (reversing district court denial of JMOL

5   because "substantial evidence does not support the conclusion that the [parent] patent

6   specification meets the written description requirement relative to claims 1 and 9 of the

7   [child] patent. Accordingly, these claims are not entitled to the parent application's filing

8   date.").

9   ## II.   ADDITIONAL BACKGROUND

10  **A.   Mr. Jacobs' "inventions" and Mr. Karpf's patent factory.**

11          As reported above, VDPP contends the patents in suit are entitled to the benefit of

12  the 2002 filing date of the '902 patent. (*See* SUF ¶ 2.) That patent is ponderously titled:

13  "Eternalism, a Method for Creating an Appearance of Sustained Three-dimensional

14  Motion-direction of Unlimited Duration, Using a Finite Number of Pictures." (Sears decl.

15  exh. 4.) Its sole named inventor is Kenneth Jacobs. (*Id.*) In deposition, Mr. Jacobs

16  testified that the patent has its origins in live performances that he began giving in 1975,

17  involving the simultaneous projection onto a single viewing surface, from two cameras,

18  of proximate frames from the same film. (Sears decl. exh. 3 at 8:3–9:17.) The patented

19  invention is a method of capturing in static media that "eternalism" effect he had

20  previously been exhibiting only in live performances. (*See id.* at 73:12–74:21.)

21          The next generation in the priority chain, after the '902 patent, is a pair of

22  patents—U.S. Patent Nos. 7,405,801 and 7,522,257—filed as CIPs of the '902 patent,

23  and directed to glasses that deliver a three-dimensional experience to viewers of ordinary

24  film. Mr. Jacobs refers to these glasses as Pulfrich lenses or 3Deeps. According to Mr.

25  Jacobs, the glasses are "a separate thing" from the eternalisms of the '902 patent. (Sears

26  decl. exh. 3 at 98:13.) But despite being directed to different inventions, the patents on

27  the glasses nonetheless claim priority to the '902 patent.

28

7

Mr. Jacobs invented his glasses in "the middle '90s" (Sears decl. exh. 3 at 97:1–7), but patent applications trailed the invention by about a decade. The first applications on the glasses were provisionals filed in 2005, followed in 2006 by the non-provisional applications on which the '801 and '257 patents later issued. (*See* Sears decl. exh. 5 at 1:10–2:15 [i.e., col. 1, line 10 to col. 2, line 15].)

That was the end of Mr. Jacobs' inventive activity, and it should have been the end of the patent family. But an enterprising business partner had other plans. The first ('801) 3Deeps patent names Mr. Jacobs as its sole inventor. But the second ('257) adds Ronald Karpf as a co-inventor. Mr. Karpf is Mr. Jacobs' brother-in-law. (Sears decl. exh. 3 at 7:12–14.) Mr. Karpf is not, however, truly a co-inventor. Mr. Jacobs' inventions are "totally within -- within [his] world of, you know, vision and film"; Mr. Karpf is named as a co-inventor "because he's a partner," not because he made any inventive contributions. (*Id.* at 97:13–98:4; *see also id.* at 71:20–72:2, 102:13–15.) Mr. Karpf proved his worth as a business partner by aggressively growing the patent property, even after Mr. Jacobs was done inventing.

A few generations after the first Pulfrich lens patents, Mr. Karpf had the eternalisms and Pulfrich lens disclosures blended together, in a CIP application filed in 2014 that soon yielded U.S. Patent No. 9,167,235—the grandparent of the '444 patent in suit. The original ('902) eternalisms patent had 14 columns of textual disclosure and 12 sheets of figures; the original ('801) Pulfrich lens patent had 28 columns of textual disclosure and seven sheets of figures; by combining them and mixing in some additional filler as well, Mr. Karpf grew the aggregate disclosure of the '235 patent to 44 columns of text and 30 sheets of figures. A few generations later, beginning with a CIP application filed in 2017 that soon yielded U.S. Patent No. 9,781,408—the parent of the '922 and grandparent of the '380 patents in suit—Mr. Karpf ballooned the disclosure to 112 columns of text and 54 sheets of figures.

VDPP's assertion of priority to the '902 patent that issued solely in Mr. Jacobs' name gives the lie to any pretense that the substantial additions made to the patent

property under Mr. Karpf's direction embody genuine inventive activity at issue in this and similar actions. Rather, the aim has been to make it appear, by *ex post* additions to an early original, that Mr. Jacobs' eternalisms disclosure was somehow broad enough to encompass later work done by others on, *e.g.*, sharper video images—and to obscure the truth with an ever-metastasizing growth of figures and words.

Of especial note, the processor around which the asserted patent claims revolve was not part of Mr. Jacobs' original inventions. According to Mr. Jacobs: "I -- I think had the -- the idea of the glasses. I don't know anything about the -- the processors." (Sears decl. exh. 3 at 111:12–112:4.) Because Mr. Karpf had the processor details added to the patent disclosure along the way, the asserted claims are not entitled to the 2002 filing date of Mr. Jacobs' original patent.

**B.    Selections from the patent family tree.**

Of the extensive family spawned from the humble origins of Mr. Jacobs's limited "inventions," the following nine patents are of note, in connection with this motion:

| Patent no. | Application date | Issue date | Relationship | Significance |
|---|---|---|---|---|
| 7,030,902 | Jan. 22, 2002 | Apr. 18, 2006 | Primogenitor | "Eternalisms" patent; anchor for VDPP priority claims |
| 7,405,801 | Mar. 10, 2006 | July 29, 2008 | Child of '902 | First 3Deeps patent |
| 7,522,257 | Mar. 10, 2006 | Apr. 21, 2009 | Child of '902 | Mr. Karpf added as co-inventor |
| 9,167,235 | Aug. 4, 2014 | Oct. 20, 2015 | Sixth-gen. descendant of '257 | "Eternalism" and "3Deeps" specifications merged |
| 9,426,452 | Sept. 10, 2015 | Aug. 23, 2016 | Child of '235 | First video stream disclosure |
| 9,699,444 | July 22, 2016 | July 4, 2017 | Child of '452 | **Patent in suit**; first disclosure of image frame expansion |

1
2
3
4
5
6

| Patent no. | Application date | Issue date | Relationship | Significance |
|---|---|---|---|---|
| 9,781,408 | May 26, 2017 | Oct. 3, 2017 | Child of '444 | Final major additions to specification |
| 9,948,922 | Aug. 22, 2017 | Apr. 17, 2018 | Child of '408 | **Patent in suit** |
| 10,021,380 | Feb. 28, 2018 | July 10, 2018 | Child of '922 | **Patent in suit** |

### III.   ARGUMENT

7
8
9
10
11
12

On appeal from this Court's judgment that VDPP's asserted patent claims are invalid for indefiniteness, the Federal Circuit relied on disclosure relating to the "processor" limitation (and the "storage" limitation) that did not appear in the priority chain even as late as the '444 patent, let alone in 2002. (*See* ECF 42 at 7 & n. 2.) That is sufficient reason to reject VDPP's proposed 2002 priority date for the asserted claims.

13
14
15
16
17
18
19
20
21
22
23
24

Moreover, each asserted claim recites specific processor features that find no written description support in the chain of applications through which VDPP attempts to trace priority until making their *ex nihilo* appearance in the applications on which the patents in suit issued. In particular, they are not supported by the passages from the '902 patent that VDPP alleges they are. VIZIO set forth its written-description contentions in response to VIZIO's interrogatory no. 1. While meeting and conferring about this motion, VIZIO's counsel confirmed that the contentions VDPP set forth in its "First Amended VDPP LLC Objections and Responses to VIZIO First Set of Interrogatories," served on October 12, 2020, remain current. As shown below, the passages identified in that response do not support the relevant claim limitations. Therefore the asserted claims are not entitled to the benefit of any priority date earlier than the dates on which their respective applications were filed.

25
26
27
28

**A.      The asserted claims of the '444 patent are not entitled to the benefit of any priority date earlier than July 22, 2016, when the application on which that patent issued was filed.**

VDPP asserts claims 1 and 27 of the '444 patent. (SUF ¶ 4.) Claim 27 depends from, and thus incorporates, claim 26. (*Id.*) In relevant part, claim 1 requires "a processor adapted to: obtain a first image frame from a first *video stream*; [and] *expand* the first image frame to generate a modified image frame …" (SUF ¶ 5, emphasis added.)[2] Claim 26 similarly requires "a processor adapted to: obtain a first image frame from a first *video stream*; [and] generate a modified image frame by … *expanding* the first image frame …" (SUF, ¶ 6, emphasis added.)

Claim 26's recitation of "expanding the first image frame" is part of a larger, disjunctive list:

> generate a modified image frame by performing at least one of expanding the first image frame, shrinking the first image frame, removing a portion of the first image frame, stitching together the first image frame with a second image frame, inserting a selected image into the first image frame, and reshaping the first image frame …

(SUF ¶ 6.) Written description support must be provided for the full scope of the claim, and that scope includes generating a modified image frame by performing each of the enumerated operations. Therefore VDPP cannot vindicate its priority claim without showing *ancestral* written description support—i.e., written description support *in the '902 patent*, to which VDPP claims priority—for generating a modified image frame by expanding the first image frame, in particular. *See Tronzo*, 156 F.3d at 1158.

---

[2] The accompanying SUF sets forth the complete text of all the asserted patent claims.

1.   **A processor adapted to obtain image frames from a video stream was not disclosed prior to September 10, 2015.**

As ancestral written description support for claims 1 and 27's requirement of "a processor adapted to: obtain a first image frame from a first video stream," VDPP relies solely on the following passage: "The present invention is best created on the computer, to be viewed on the computer …" (SUF ¶ 5.) But a generic reference to "the computer" does not describe a processor that is specifically adapted to obtain an image frame from a video stream. Because the passage that VDPP cites says nothing about a video stream, or a processor adapted to obtain an image frame from such a stream, it is plainly insufficient to satisfy the written description requirement. (*See* SUF ¶ 16; Reader decl. ¶ 17.)

A different portion of the '444 patent specification, not cited by VDPP, reads: "In accordance with another embodiment, an apparatus includes a storage … and a processor. The processor is adapted to obtain a first image from a first video stream, [and] obtain a second image from a second video stream …" (*See* SUF ¶ 17.) The '444 patent inherited that passage from its parent, U.S. Patent No. 9,426,452, which was filed on September 10, 2015. (SUF ¶ 18.) But that passage does not appear in the '902 patent or in any other earlier member of the family. (*Id.*)[3] Therefore asserted claims 1 and 27 of the '444 patent cannot claim the benefit of any filing date prior to September 10, 2015.

2.   **A processor adapted to generate a modified image frame by expanding an image frame was not disclosed prior to July 22, 2016.**

As written description support for the limitation of "a processor adapted to: … expand the first image frame to generate a modified image frame," VDPP identifies the underlined portion of the following specification passage, which traces back to the '902 patent (italics are added for emphasis):

---

[3] Because this passage does not appear in earlier generations, including the '452 patent's parent, the '452 patent is really only a continuation-*in-part* of its parent, and the claim on the face of the '452 patent that it is a pure *continuation* of its parent is false. (*See* Sears decl. exh. 6.) That is only one of many false continuation claims in this patent family.

Picture-frames A and B may be near-identical or have only some *elements* with close visual correspondence. Similarity of shape and location *within the frame* are important factors determining the effect. … While *matching image elements* in pictures A and B must occupy almost the exact screen-space in order to combine properly, it will be the differences between them (within close tolerances) that will produce and determine the character of movement and dimensionality. <u>Computer graphics *cut-and-paste* techniques can be used to select and place, shrink and *expand* and otherwise manipulate *matching elements* (from any source) into effective screen-locations relative to each other. One or both pictures may be collaged or stitched together from multiple sources, *parts may be* removed or inserted, lifted and *reshaped* or/and relocated.</u>

(SUF ¶ 20; Sears decl. exh. 4 at 13:51–14:4; exh. 7 at 46:37–57.) This passage describes the expansion of matching image elements cut and pasted within frames—as part of a process of "Eternalism Composition." (Sears decl. exh. 7 at 45:37–38.) It *does not* describe the expansion of entire frames. (*See* Reader decl. ¶ 11.) Therefore, this passage does not provide written description support for a processor adapted to generate a modified image *frame* by expanding an image *frame*. (*See* SUF ¶ 21.)

Whether a teaching to expand image *elements* might make expanding image *frames* obvious is beside the point because "[a] disclosure in a parent application that merely renders the later-claimed invention obvious is not sufficient to meet the written description requirement." *Tronzo*, 156 F.3d at 1158. The disclosure that the '444 patent inherited from the '902 patent is the expansion of image elements within an image frame, as part of the '902 patent's overall teaching of eternalism techniques. (*See* Reader decl. ¶ 11.) VDPP's priority claim fails because there was no disclosure of expanding an entire image frame in the '902 patent.

1    Indeed, the first description of a processor adapted to generate modified frames by

2    expanding other frames, anywhere in the priority chain, is in claim 1 of the '444 patent

3    itself (which was part of the '444 patent's application as originally filed). Therefore, the

4    asserted claims of the '444 patent are not entitled to the benefit of any filing date earlier

5    than its own application, which is July 22, 2016.

6    **B.    Claim 2 of the '922 patent is not entitled to the benefit of any priority date**

7    **earlier than August 22, 2017, when the application on which that patent issued**

8    **was filed.**

9    VDPP asserts claim 2 of the '922 patent, which depends from (and thus

10   incorporates) claim 1. Claim 1 recites, in relevant part:

11   a processor adapted to:

12   obtain a first image frame and a second image frame from a first video

13   stream;

14   generate a first modified image frame by expanding the first image

15   frame …;

16   generate a second modified image frame by expanding the second

17   image frame …;

18   generate a bridge frame …;

19   display the first modified image frame;

20   display the bridge frame; and

21   display the second modified image frame.

22   (SUF ¶ 10.) Claim 2 adds: "wherein the bridge frame is black." (SUF ¶ 11.) For

23   reasons explained in sections III.A.1 and III.A.2 above, in connection with the '444

24   patent, the video-stream and image-frame-expansion recitals bar any priority claim

25   reaching back further than September 10, 2015 (the filing date for the '444 patent's

26   parent) and July 22, 2016 (the filing date for the '444 patent) respectively. (*See*

27   SUF ¶¶ 16, 18, 21.) As shown below, other recitals bar even those priority claims,

28

14

1  leaving claim 2 of the '922 patent with no priority earlier than the filing of the

2  application on which that patent issued.

3            **1.**      **A processor adapted to obtain first *and* second image frames from the**

4                      **same video stream was not disclosed prior to August 22, 2017.**

5         As written description support for the '922 patent's video stream, VDPP cites the

6  same specification passage that it cited for the video stream limitations of the '444 patent.

7  (SUF ¶ 15.) As shown in section III.A.1 above, however, that passage provides no

8  support for obtaining image frames from video streams; and indeed a processor adapted

9  to obtain image frames from video streams was not disclosed prior to September 10,

10  2015—the filing date of the application for the '452 patent, which is the '444 patent's

11  parent. (*See* SUF ¶¶ 16–18.) The '452 patent's disclosure was of a "processor … adapted

12  to obtain a *first* image from a *first* video stream, [and] obtain a *second* image from a

13  *second* video stream." (*See* SUF ¶ 17, emphasis added.) Here, by contrast, claims 1 and 2

14  of the '922 patent require "a processor adapted to: obtain a *first image frame and a*

15  *second image frame* from a *first* video stream." (SUF ¶ 10, emphasis added.) Those

16  claims were part of the original application on which the '922 patent would later issue.

17  But a processor adapted to obtain first *and* second image frames from one and the same

18  video stream was not disclosed prior to the August 22, 2017 filing of that application, and

19  therefore claim 2 is not entitled to the benefit of an earlier priority date. (*See* SUF ¶ 19.)

20            **2.**      **A processor adapted to display successive expansion-generated modified**

21                      **image frames, separated by a black bridge frame, was not disclosed**

22                      **prior to August 22, 2017.**

23         As shown in section III.A.2 above, expanding an image frame to generate a

24  modified image frame was not disclosed prior to the '444 patent application's filing date.

25  Even then, such disclosure was limited to generating only one such modified image

26  frame, and to a display sequence consisting of that one modified image frame followed

27  by a bridge frame. (*See* SUF ¶¶ 5, 6.) The '922 patent claims add a new twist: expanding

28  first *and* second image frames, to generate first *and* second modified image frames—then

displaying *both* modified image frames, with a black bridge frame between them. (SUF ¶¶ 10–11.) That is not disclosed in the '444 patent. (*See* SUF ¶¶ 5–7.)

To support its priority claim for the '922 patent, VDPP cites the same '902 patent disclosure about expanding image *elements* as it did for the '444 patent. (SUF ¶ 20.) But that ancestral disclosure, quoted at length in section III.A.2 above, describes (in relevant part) expanding elements copied from one image frame, and pasting the expanded elements into a second image frame. (*See id.*) At most, it describes one image frame with original (unexpanded) elements and a second image frame with expanded elements; it does not describe a *succession* of expanded image frames. (*See id.*)

A processor adapted to expand first and second image frames, and thereby generate first and second modified image frames, then display both modified (expanded) image frames with a black frame between, was not disclosed before being recited by claims 1 and 2 in the application on which the '922 patent issued. (*See* SUF ¶ 23; Reader decl. ¶¶ 23–24.) Therefore those claims are not entitled to the benefit of any priority earlier than the date on which that application was filed, which is August 22, 2017.

**C.    Claim 6 of the '380 patent is not entitled to the benefit of any priority date earlier than February 28, 2018, when the application on which that patent issued was filed.**

Finally, VDPP asserts claim 6 of the '380 patent, which in relevant part recites:

> a processor … adapted to:
>
> obtain from said storage a first image frame … and a second image frame …;
>
> expand the first image frame to generate a modified first image frame …;
>
> expand the second image frame to generate a modified second image frame …;
>
> combine the modified first image frame and the modified second image frame to generate a modified combined image frame …; and

16

display the modified combined image frame.

(SUF ¶ 14.) For reasons explained in section III.A.2 above, in connection with the '444 patent, the image-frame-expansion recitals bar any priority claim reaching back further than July 22, 2016, the filing date for the application on which the '444 patent issued. (*See* SUF ¶ 21.)

Moreover, like the '922 patent, the '380 patent introduces a further complication not disclosed in any of its ancestors. Specifically, claim 6 of the '380 patent requires the generation, through expansion, of two modified image frames; combining the two modified image frames; and then displaying the combination. (SUF ¶ 14.) The combining of expansion-generated image frames was not disclosed before being recited as part of the application on which the '380 patent issued, nor was *displaying* such a combination. (*See* SUF ¶ 25; Reader decl. ¶¶ 32–33.) Therefore claim 6 of the '380 patent is not entitled to the benefit of any priority earlier than the filing date of that application, which was April 28, 2018.

## IV.   CONCLUSION

The Court should enter summary judgment that: (1) claims 1 and 27 of the '444 patent are not entitled to the benefit of any priority date earlier than July 22, 2016; (2) claim 2 of the '922 patent is not entitled to the benefit of any priority date earlier than August 22, 2017; and (3) claim 6 of the '380 patent is not entitled to the benefit of any priority date earlier than April 28, 2018.

Dated: September 19, 2022               MASCHOFF BRENNAN

                                        By:   */s/ L. Rex Sears*
                                        _____
                                        Charles S. Barquist
                                        L. Rex Sears
                                        Erynn L. Embree

                                        Attorneys for Defendant VIZIO, Inc.